UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| Jara Gobbi, | ) | Civil Action No. 4:03-1758-CMC-TER |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| -vs- | ) | REPORT AND RECOMMENDATION |
| | ) | |
| Suntrust Mortgage, Inc., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

Plaintiff initiated this action on May 22, 2003, alleging violations of the Real Estate Settlement Procedures Act (RESPA), 12 U.S.C. §2601 *et seq*. Specifically, she alleges that defendant violated 12 U.S.C. §2605(b) which requires that notice of assignment, sale or transfer of servicing of a mortgage be given to the borrower by both the transferee and transferor of the servicing of the mortgage loan. Defendants filed a motion to dismiss pursuant to Rule 12(b)(6) on July 14, 2003, arguing that although the mortgage loans had been assigned, the "servicing" of the loans had not been assigned, sold or transferred. By order filed February 27, 2004, the Honorable Cameron McGowan Currie adopted the undersigned's Report and Recommendation recommending the motion to dismiss be denied because the defendant's motion addressed matters outside of the pleadings

This matter is now before the court on defendant's motion for summary judgment (Document # 47) filed December 14, 2004. Because the plaintiff is proceeding *pro se*, she was advised on or about September 1, 2004, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), that a failure to respond to the defendant's motion for summary judgment with additional evidence or

-1-

counter affidavits could result in dismissal of her complaint. The plaintiff filed her response on January 27, 2005.

Since the plaintiff is proceeding pro se, this court is required to treat her filings and pleadings with some degree of liberality. Estelle v. Gamble, 429 U.S. 97 (1976); Hughes v. Rowe, 449 U.S. 9 (1980) (per curiam). However, plaintiff is cautioned that while the mandated liberal construction afforded pro se pleadings means that if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so, but that the court may not rewrite pleadings to include claims that were never presented; Barnett v. Hargett, 174 F.3d 1128, 1133 (10th Cir. 1999), or construct plaintiff's legal arguments for her, Small v. Endicott, 998 F.2d 411, 417-418 (7th Cir. 1993), or "conjure up questions never squarely presented" to the court. Beaudett v. City of Hampton, 775 F.2d 1274, 1278 (4th Cir. 1985), cert. denied, 475 U.S. 1088 (1986). Further, while the court should afford a pro se litigant every reasonable opportunity to construct and present a potentially meritorious claim, the court cannot act as counsel for the pro se litigant or excuse a failure to comply with the rules of this court.

**Facts**

The facts are generally undisputed. On April 27, 1993, Crestar Mortgage Corporation entered into a Seller/Servicer Contract with Countrywide Mortgage Conduit (Countrywide). (Affidavit of Rebecca W. Shaia). The preamble of the agreement reads as follows:

> The Seller/Servicer[1] desires to sell mortgage loans to, and service mortgage loans for, Countrywide Mortgage Conduit and Countrywide Mortgage Conduit desires to purchase mortgage loans from Seller/Servicer and have Seller/Servicer service mortgage loans pursuant to the terms of this Contract and Countrywide Mortgage Conduit Seller/Servicer Guides incorporated by

---

[1] Crestar is designated as the Seller/Servicer

> reference, as amended, supplemented or otherwise modified, from time to time (together, the "Guides").

The agreement also sets forth the duties that the Seller/Servicer is required to perform under the terms of the of the agreement. Paragraph (4) provides as follows:

> Seller/Servicer shall diligently perform all duties incident to the selling and servicing of all mortgages which may be sold by Seller/Servicer from time to time and such other mortgages as Countrywide Mortgage Conduit and Seller/Servicer may mutually agree upon . . . . Seller/Servicer agrees to service (if servicing is retained) each of such mortgages continuously beginning with the purchase date for such mortgages, or the date of designation of Seller/Servicer as replacement Seller/Servicer for mortgages previously purchased by Countrywide Mortgage Conduit from another Seller/Servicer, until all interest and principal on each mortgage has been paid in full, the mortgage has been liquidated as provided in the Guides, or such servicing duties are terminated by Countrywide Mortgage Conduit.

On June 13, 1993, Countrywide changed its name to Independent National Mortgage Corporation (IndyMac).[2]

In or about October 30, 1997, plaintiff and her husband executed promissory notes and associated mortgages on eight pieces of real property[3] to Crestar Mortgage Corporation. (Affidavit of Rebecca W. Shaia). In 1999, Crestar Mortgage Corporation changed its name to Suntrust Mortgage, Inc., (Suntrust) after the merger of Suntrust with Crestar Mortgage Corporation. (Affidavit of Rebecca W. Shaia). At all times relevant to the matters alleged in the complaint,

---

[2] It is not entirely clear from the record how this agreement and the relationship between Countrywide/IndyMac and Crestar/Suntrust relate to the mortgage loans given to plaintiff and her husband. Defendant's attorney explained at the hearing held October 4, 2004, that in the mortgage lending industry Countrywide/IndyMac are one of several funding sources for mortgages and that Countrywide/IndyMac funded the mortgage loans while Crestar/Suntrust were the originators of the mortgage loans.

[3] Each property was part of a horizontal property regime located in Lyon's Cove subdivision. (Hearing Tran. at 76).

Suntrust was the servicer of the loans made to plaintiff and her husband and Suntrust was the only entity with which plaintiff and her husband could direct questions and inquiries regarding the mortgage loans. (Affidavit of Rebecca W. Shaia). Although defendant indicates by an affidavit submitted that at no time was the servicing of these loans transferred, sold or assigned from Suntrust (Affidavit of Rebecca W. Shaia), they do not dispute that IndyMac was the "master servicer" of the mortgage loans and that IndyMac had the option of servicing the loans or allowing Suntrust to service the loans.

By separate instruments dated October 30, 1997, Crestar "assigns, grants, transfers and sets over" to The Bank of New York, Trustee under the Pooling and Servicing Agreement Series 1998-L. (Exhibit D to Defendant's Mem. filed June 18, 2004 - Document # 40). The instruments were filed in the Clerk of Court's office, Horry County, South Carolina on several different dates. Three were filed on August 9, 1999. One was filed on July 27, 1999. One was filed on December 9, 1998 and three were filed on October 19, 1998. (Exhibit D to Defendant's Mem. filed June 18, 2004).

Bank of New York initiated foreclosure actions against plaintiff and her husband on the eight mortgages in or about May 2000. Plaintiff was served with the foreclosure actions separately, the first of which was in May 2000 and the last of which was on June 14, 2000.[4] During the foreclosure proceedings, a hearing was held at which plaintiff testified. She testified that the mortgages to Suntrust were a result of refinancing existing mortgages on the eight properties. (Special Referee Hearing Transcript attached to Defendant's Mem. filed June 18, 2004 as Exhibit A (Hearing Trans.) at 76). She testified that the properties were investment properties and they took out eight separate loans instead of one jumbo mortgage in anticipation of selling the "business properties" one at a

---

[4] Plaintiff represented these dates at the hearing held October 4, 2004.

time. (Hearing Trans. at 76).

Defendants present three arguments for summary judgment: (1) plaintiff failed to bring the action within the applicable statute of limitations, (2) this action involves "business" loans to which RESPA is not applicable, and (3) RESPA does not require notice to the borrower when mortgage loans on are sold, transferred or assigned, but only when "servicing" of the mortgage loans are sold, transferred or assigned and which is not present in this action. Each of these issues is dispositive of the entire case. For the reasons that follow, it is recommended that defendant's motion be granted because (1) this action was not filed within the statute of limitations and because (2) RESPA is not applicable to this action.

## Summary Judgement Standard

Defendants filed their motion for summary judgment pursuant to Rule 56, FRCP. The moving party bears the burden of showing that summary judgment is proper. Summary judgment is proper if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Rule 56(c), FRCP; Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Summary judgment is proper if the non-moving party fails to establish an essential element of any cause of action upon which the non-moving party has the burden of proof. Celotex, 477 U.S. 317. Once the moving party has brought into question whether there is a genuine issue for trial on a material element of the non-moving party's claims, the non-moving party bears the burden of coming forward with specific facts which show a genuine issue for trial. Fed.R.Civ.P. 56(e); Matsushita Electrical Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574 (1986). The non-moving party must come forward with enough evidence, beyond a mere scintilla, upon which the fact finder could reasonably find for it. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). The facts and inferences

to be drawn therefrom must be viewed in the light most favorable to the non-moving party. Shealy v. Winston, 929 F.2d 1009, 1011 (4th Cir. 1991). However, the non-moving party may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment. Barber v. Hosp. Corp. of Am., 977 F.2d 874-75 (4th Cir. 1992). The evidence relied on must meet "the substantive evidentiary standard of proof that would apply at a trial on the merits." Mitchell v. Data General Corp., 12 F.3d 1310, 1316 (4th Cir. 1993).

### Statute of Limitations

12 U.S.C. §2614 provides, "[a]ny action pursuant to the provisions of section 2605 . . . of this title may be brought . . . within 3 years . . . from the date of the occurrence of the violation."

The sale of the mortgage loans occurred on November 18 and 19, 1997, and plaintiff did not file her action until May 22, 2003. Clearly, the action was not filed within three years of the alleged RESPA violation. Plaintiff, however, argues that she was not aware of the violation when it occurred and, thus, the statute of limitation should be equitably tolled. In fact, she argues that she did not become aware of the assignment until the foreclosure hearing held on February 20, 2001, and within the three year limitation period.

Defendant argues that the limitation period in §2614 is jurisdictional and not subject to equitable tolling. This view has been recognized by the District of Columbia Circuit. See Hardin v. City Title & Escrow Co., 797 F.2d 1037, 1041 (D.C. Cir. 1986); Zaremski v. Keystone Title Assoc, Inc. 884 F.2d 1391, 1989 WL 100656 (4th Cir. 1989)(unpublished). However, several courts have declined to follow Hardin. See Mullinax v. Radian Guar. Inc., 199 F.Supp.2d 311, 326 (M.D.N.C. 2002); Pedraza v. United Guar. Corp., 114 F.Supp.2d 1347, 1352 (S.D.Ga. 2000); Kerby

v. Mortgage Funding Corp., 992 F.Supp. 787, 792 (D.Md. 1998); Moll v. U.S. Life Title Ins. Co. of New York, 700 F.Supp. 1284, 1287 (S.D.N.Y. 1988).[5] The discussions address the rules of statutory construction and two countervailing policies: (1) equitable tolling "is read into every federal statute of limitation", Holmberg v. Armbrecht, 327 U.S. 392 (1946), and (2) federal statutes are to be strictly construed. However, because the facts of this case do not warrant the application of equitable tolling, it is unnecessary to decide whether or not equitable tolling is available to a party under §2614.

A limitations period is subject to equitable tolling if appropriate circumstances exist. Irwin v. Department of Veterans Affairs, 498 U.S. 89,95 (1990); English v. Pabst Brewing Co., 828 F.2d 1047,1049 (4th Cir. 1987), *cert. denied*, 486 U.S. 1044 (1988). Equitable tolling applies when the defendant has wrongfully deceived or misled the plaintiff to conceal the existence of a cause of action. Kokostis v. United States Postal Service, 223 F.3d 275, 280 (4th Cir. 2000)(citing English, 828 F.2d at 1049). It may be available to a diligent plaintiff in exceptional circumstances. Irwin, 498 U.S. at 96. As set forth by the Fourth Circuit,

> [A]ny invocation of equity to relieve the strict application of a statute of limitations must be guarded and infrequent, lest circumstances of individualized hardship supplant the rules of clearly drafted statutes. To apply equity generously would loose the rule of law to whims about the adequacy of excuses, divergent responses to claims of hardship, and subjective notions of fair accommodation. We believe, therefore, that any resort to equity must be reserved for those rare instances where--due to circumstances external to the party's own conduct--it would be unconscionable to enforce the limitation period against the party and gross injustice would result.

Rouse v. Lee, 339 F.3d 238, 246 (4th Cir. 2003)(quoting Harris, 209 F.3d at 330); See also Gayle v. United Parcel Service, Inc., 401 F.3d 222 (4th Cir. 2005). This "extraordinary circumstances" test

---

[5] This is not an exhaustive list of the cases confronting this issue.

requires (1) extraordinary circumstances, (2) beyond plaintiff's control or external to her own conduct, (3) that prevented her from filing on time. Rouse, 339 F.3d at 246.

Plaintiff simply alleges that she did not have knowledge of the sale and assignment of the mortgage loans. She does not present "extraordinary circumstances" to warrant equitable tolling. Although fraudulent or deceptive conduct can amount to extraordinary circumstances, plaintiff fails to present evidence of intentional conduct amounting to fraud or deception. Additionally, public notice of the assignment of the mortgages was filed in the Horry County Clerk of Court's office on August 9, 1999, and before. Therefore, plaintiff was on inquiry or constructive notice that the mortgages had been assigned, transferred or sold no later than August 9, 1999.[6] See Berry v. McLeod, 492 S.E.2d 794,800 (S.C. App. 1997); See also In re Hudgins, 967 F.2d 973,976 (4th Cir. 1992); Brumbaugh v. Princeton Partners, 985 F.2d 157 (4th Cir. 1993). Therefore, assuming that defendant's conduct[7] warrants the application of the discovery rule, the limitations period on her claim expired in August 2002. As set forth above, plaintiff did not file her action until May 2003, well outside the limitations period. Therefore, defendant is entitled to summary judgment on the basis of the statute of limitations.

The two remaining arguments for summary judgment asserted by the Defendant are also discussed below.

---

[6] §2605 requires notice to the borrower within fifteen (15) days after the effective date of the transfer of the servicing of the mortgage loan. Therefore, arguably the limitations period would not begin to run until August 24, 1999.

[7] In other words, assuming that, in the light most favorable to the plaintiff, circumstantial evidence exist showing fraudulent concealment or other malfeasance on the part of defendant to constitute "extraordinary circumstances."

**Transfer of "Servicing"**

The first argument is that "servicing" was not transferred. §2605(b)(1) requires notice to the borrower following "any assignment, sale or transfer of the servicing of the loan . . ." Defendant admits that IndyMac was the "master servicer" of the loan but maintains that Suntrust (formerly Crestar) retained the servicing duties throughout the existence of plaintiff's mortgage loans. From the facts presented by defendant, it appears that the right to perform servicing may have been "sold" although the actual responsibilities of servicing was never transferred. The Pooling and Servicing Agreement is not part of the record. What is contained in the record indicates that IndyMac was the "master servicer" and had the right to control who performed the servicing of the loans. It further shows that Suntrust actually serviced the loans but that Bank of New York brought the foreclosure action in the capacity as Trustee. As presented, the record is not clear, or at least there is an issue of fact, as to who was a "servicer," when they obtained that status and whether or not servicing was ever "sold" or other event triggering application of the statutory notice requirement. Therefore, summary judgment is not appropriate on this ground.

**Business or Commercial Purpose Exclusion**

The remaining argument presented by defendant concerns an exclusion in RESPA. RESPA excludes from coverage credit transactions involving loans "primarily for business, commercial, or agricultural purposes." 12 U.S.C. §2606; 24 C.F.R. §3500.5(b)(2).

Although there is little guidance in case law interpreting §2606, §2606(b) states that interpretation of §2606 should be the same as the interpretation of §1603(1) of Title 15, The Truth in Lending Act.

Courts interpreting §1603(1) have found it necessary to review the transaction as a whole

to determine whether or not it is for "business" or "commercial" purpose. As the Ninth Circuit set forth:

> We have found it necessary when classifying a loan to examine the transaction as a whole, paying particular attention to the purpose for which the credit was extended in order to determine whether the transaction was primarily consumer or commercial in nature. In making this determination, we have elevated substance over form, holding that neither the lender's motives nor the fashion in which the loan is memorialized are dispositive of this inquiry. We must therefore look to the substance of the transaction and the borrower's purpose in obtaining the loan, rather than the form alone.

Slenk v. Transworld Systems, Inc., 236 F.3d 1072,1075 (9th Cir. 2001)(internal citations and quotations omitted). Other courts have followed this approach. Riviere, et al. V. Banner Chevrolet, Inc., 184 F.3d 457, 462 (5th Cir. 1999); Puckett v. Georgia Homes, Inc., 369 F.Supp. 614 (D.S.C. 1974); 54 A.L.R. Fed. 491, What Constitutes "Business or Commercial" Purpose Within Meaning of §104(1) of Truth In Lending Act(15 U.S.C.A. §1603(1)), Exempting Business or Commercial Credit Transactions From Act, §§2-4.

Plaintiff's testimony at the foreclosure hearing leaves no doubt as to the purpose of the subject mortgage loans. Plaintiff and her husband purchased each of the eight properties not for their own personal use but as investments to liquidate one at a time. The record simply contains insufficient evidence to create an issue of fact as to the purpose of the loan. Although the loans were for residential real estate, it is undisputed that eight properties were involved and that plaintiff testified that they were investment properties, no reasonable trier of fact could conclude that the loans were not for business or commercial purposes. The case law guides us to determine substance over form. Accordingly, defendant's motion for summary judgment should be granted on this issue as well.

For the foregoing reasons, it is recommended that defendant's motion for summary judgment (Document # 47) be granted and this case dismissed.


August 3, 2005                                             s/Thomas E. Rogers, III
Florence, South Carolina                          Thomas E. Rogers, III
                                                                   United States Magistrate Judge










**The parties' attention is directed to the important notice contained on the following page(s).**

## Notice of Right to File Objections to Magistrate Judge's "Report and Recommendation"
## &
## The Serious Consequences of a Failure to Do So

The parties are hereby notified that any objections to the attached Report and Recommendation (or Order and Recommendation) must be filed within ten (10) days of the date of service. 28 U.S.C. § 636 and Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three days for filing by mail. Fed. R. Civ. P. 6. A magistrate judge makes only a recommendation, and the authority to make a final determination in this case rests with the United States District Judge. *See* Mathews v. Weber, 423 U.S. 261, 270-271 (1976); and Estrada v. Witkowski, 816 F. Supp. 408, 410, 1993 U.S.Dist. LEXIS® 3411 (D.S.C. 1993).

During the ten-day period for filing objections, but not thereafter, a party must file with the Clerk of Court specific, written objections to the Report and Recommendation, if he or she wishes the United States District Judge to consider any objections. Any written objections must *specifically identify* the portions of the Report and Recommendation to which objections are made *and* the basis for such objections. *See* Keeler v. Pea, 782 F. Supp. 42, 43-44, 1992 U.S.Dist. LEXIS® 8250 (D.S.C. 1992); and Oliverson v. West Valley City, 875 F. Supp. 1465, 1467, 1995 U.S.Dist. LEXIS® 776 (D.Utah 1995). Failure to file written objections shall constitute a waiver of a party's right to further judicial review, including appellate review, if the recommendation is accepted by the United States District Judge. *See* United States v. Schronce, 727 F.2d 91, 94 & n. 4 (4th Cir.), *cert. denied*, Schronce v. United States, 467 U.S. 1208 (1984); and Wright v. Collins, 766 F.2d 841, 845-847 & nn. 1-3 (4th Cir. 1985). Moreover, if a party files specific objections to a portion of a magistrate judge's Report and Recommendation, but does not file specific objections to other portions of the Report and Recommendation, that party waives appellate review of the portions of the magistrate judge's Report and Recommendation to which he or she did not object. In other words, a party's failure to object to one issue in a magistrate judge's Report and Recommendation precludes that party from subsequently raising that issue on appeal, even if objections are filed on other issues. Howard v. Secretary of HHS, 932 F.2d 505, 508-509, 1991 U.S.App. LEXIS® 8487 (6th Cir. 1991). *See also* Praylow v. Martin, 761 F.2d 179, 180 n. 1 (4th Cir.)(party precluded from raising on appeal factual issue to which it did not object in the district court), *cert. denied*, 474 U.S. 1009 (1985). In Howard, *supra*, the Court stated that general, non-specific objections are *not* sufficient:

> A general objection to the entirety of the [magistrate judge's] report has the same effects as would a failure to object. The district court's attention is not focused on any specific issues for review, thereby making the initial reference to the [magistrate judge] useless. * * * This duplication of time and effort wastes judicial resources rather than saving them, and runs contrary to the purposes of the Magistrates Act. * * * We would hardly countenance an appellant's brief simply objecting to the district court's determination without explaining the source of the error.

*Accord* Lockert v. Faulkner, 843 F.2d 1015, 1017-1019 (7th Cir. 1988), where the Court held that the appellant, who proceeded *pro se* in the district court, was barred from raising issues on appeal that he did not specifically raise in his objections to the district court:

> Just as a complaint stating only 'I complain' states no claim, an objection stating only 'I object' preserves no issue for review. * * * A district judge should not have to guess what arguments an objecting party depends on when reviewing a [magistrate judge's] report.

*See also* Branch v. Martin, 886 F.2d 1043, 1046, 1989 U.S.App. LEXIS® 15,084 (8th Cir. 1989)("no de novo review if objections are untimely or general"), which involved a *pro se* litigant; and Goney v. Clark, 749 F.2d 5, 7 n. 1 (3rd Cir. 1984)("plaintiff's objections lacked the specificity to trigger *de novo* review"). This notice, hereby, apprises the plaintiff of the consequences of a failure to file specific, written objections. *See* Wright v. Collins, *supra*; and Small v. Secretary of HHS, 892 F.2d 15, 16, 1989 U.S.App. LEXIS® 19,302 (2nd Cir. 1989). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections addressed as follows:

Larry W. Propes, Clerk
United States District Court
Post Office Box 2317
Florence, South Carolina  29503
